WILLIAM K. REYNOLDS, Appellee, *v.* THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Tractor Co., Appellant).

Third District (Industrial Commission Division)   No. 3—84—0126WC

Opinion filed August 7, 1984.—Rehearing denied October 4, 1984.

BARRY, J., dissenting.

F. L. Simpson, of Peoria, for appellant.

Clem & Triggs, P.C., of Peoria, for appellee.

JUSTICE WEBBER delivered the opinion of the court:
This is a manifest-weight-of-the-evidence case. Petitioner filed a

worker's compensation claim against the respondent. The matter proceeded to arbitration and the arbitrator awarded petitioner permanent partial disability benefits and medical expenses for an injury to his knee. On review, the Industrial Commission reversed the award, finding that the petitioner failed to establish that the injury arose out of and in the course of his employment. On further review, the circuit court of Peoria County reversed the Commission and reinstated the award of the arbitrator. We, in turn, reverse the circuit court and affirm the Commission.

Petitioner was a 33-year-old core maker employed by respondent. His testimony tended to establish the following: on June 15, 1978, he and a fellow core maker, Albert Ables, noticed that a machine located near their work station had become disabled. Petitioner and Ables left their station to attend to the machine, with Ables in the van and petitioner following. On the way to the machine petitioner slipped on a patch of oil and fell on his knee. He noticed extreme soreness at the time, and after leaving the malfunctioning machine without repairing it, reported to the first aid office.

Ables testified that he left his work station and that petitioner followed a few moments later. He claimed that they repaired the machine and that petitioner left to return to his work station. At that time he heard petitioner groan and saw him clutching his left knee. He did not see petitioner slip.

Petitioner testified that he reported to an unknown nurse at the first aid office. He declined her offer of a heat pack and returned to work. The head nurse at the first aid office testified that there was no record of petitioner reporting to that office on June 15, 1978, although there were numerous other incidents of his reporting between 1970 and 1977. She also stated that she did not believe that there could be an error in the records because company policy was strict with regard to the memorializing of accidents and slip-ups do not occur. The nurse on duty at the time of petitioner's purported injury was not called to testify.

Petitioner also testified that he reported the incident to his foreman, but the foreman was not called to testify.

Petitioner took a scheduled vacation in July 1978 and after his return consulted with Dr. Giebelhausen regarding his varicose veins. During his examination the doctor noted "a little clicking sensation in the left knee which he attributes possibly secondary to an injury." The varicose veins were operated upon in September 1978 and petitioner returned to work.

In January 1979 petitioner consulted with Dr. Smith, an orthope-

dic surgeon, regarding his knee. Dr. Smith noted in his history that petitioner stated he had fallen at work in June 1978. Dr. Smith continued to treat his patient and hospitalized him in March 1980 for knee surgery. At that time a hospital history was taken and a physical examination made by Dr. Froehling, who noted, "The patient states that he has had a slowly deteriorating condition in the left knee, which is not related to any specific trauma, but he has been treated over the past years by Dr. Smith."

Caterpillar's physician, Dr. Cooper, and Dr. Smith both believed that petitioner suffered from degenerative joint disease in the left knee and that this condition could have been aggravated by the alleged injury of June 1978. Petitioner returned to work in December 1980 after an arthrotomy and osteotomy were performed on the left knee on March 25, 1980.

No evidence was presented on review before the Commission, and the Commission did not see the petitioner.

It has been said so often that it appears fatuous to repeat the doctrines that the petitioner has the burden of proof to establish all the elements of his claim, that it is the province of the Commission to evaluate the evidence and to draw inferences therefrom, and that its determination will be reversed only if it is against the manifest weight of the evidence.

In this case the evidence consisted primarily of the testimony of the petitioner himself as to how the accident happened. There was some corroboration by Ables, but their different versions undermined their credibility. The one clear thing is that Ables did not witness the alleged slip and fall. He only heard a groan and saw petitioner clutching his knee. In the same fashion, petitioner's testimony that he visited the first aid office appears tenuous in the light of the testimony by the nurse that no record of it was made despite a strict company policy of recordation of accidents.

The medical testimony is also conflicting. Dr. Smith's records indicated a statement by petitioner that he had fallen, but the hospital records made a year later indicate no specific trauma. The doctors agreed that petitioner suffered from degenerative joint disease and that this was susceptible of aggravation by an alleged fall. However, the causal connection between the disease and its potential aggravation seems extremely attenuated.

It was the job of the Commission to reconcile, if it could, these conflicting elements of evidence. It chose to do so adversely to the petitioner. We perceive no basis for upsetting that action.

Therefore, the order of the circuit court of Peoria County is re-

versed and the order of the Commission is reinstated.

Reversed.

SEIDENFELD, P.J., McNAMARA and KASSERMAN, JJ., concur.

JUSTICE BARRY, dissenting:

I respectfully dissent.

It appears to me that the majority has lost sight of the fact that the petitioner's burden of proof is to be measured by a mere preponderance of credible evidence standard–no less, no more. (*Smith v. Industrial Com.* (1983), 98 Ill. 2d 20; *Keystone Steel & Wire Co. v. Industrial Com.* (1978), 73 Ill. 2d 269, 383 N.E.2d 216.) Even though the mere fact that a petitioner's version is unrebutted will not necessarily mandate an award, the petitioner's proof of each element of his claim by what appears to be credible evidence cannot be ignored by the Commission in favor of negative and highly speculative circumstantial evidence offered by the respondent solely to attack the petitioner's credibility.

In the instant case, it is particularly noteworthy that the Commission did not have an opportunity to evaluate the petitioner's testimony and demeanor so as to assign more or less weight to the petitioner's version of facts based on his credibility as a witness. The record before the Commission was as cold as the one we have on review. The only additional evidence considered by the Commission, which had not been before arbitrator Metts, was the one-page report of Dr. Cooper submitted by counsel for the respondent.

Affirmative evidence that the petitioner's injury in fact resulted from an accident arising out of and in the course of his employment on June 15, 1978, was presented by the petitioner's testimony of the slip and fall incident and corroborated by that of his co-worker, Albert Ables. Minor discrepancies of insignificant details of the two accounts—*i.e.*, whether petitioner was headed to or from the scene of the broken-down "roll over"—do not render the petitioner's claim of an on-the-job injury unworthy of belief.

The petitioner allegedly reported to the nurse's station the night of the accident, but did not feel that the heat pack treatment she suggested would do any good. Under the circumstances, it is not beyond credulity to find that the on-duty nurse might have failed to comply with the company's policy of recording the visit on that occasion. Indeed, I find it incredulous that the company's policy of reporting vis-

its to the first aid station is sufficiently strict to guarantee that slip-ups never occur. Similarly, I do not find that the fact that the petitioner's foreman failed to testify on the petitioner's behalf provides any basis upon which to disbelieve the petitioner's claim. The record before us contains an affidavit of the respondent's personnel manager establishing that Mike Sumter, the foreman, left Caterpillar's employ on March 23, 1981, nearly three months prior to the hearing before arbitrator Metts. The affiant further recited that no record of Sumter's current address was available to him. Certainly the petitioner cannot be faulted, any more than can the employer, for not producing corroborative testimony from an unavailable witness.

The approximate date and fact of the injury were corroborated by medical evidence indicating that the petitioner complained of an injury to his left knee as early as September 1978, and by the report of Caterpillar's physician, Dr. Hugh Cooper, Jr., who examined the petitioner on November 30, 1981, and stated his conclusions as follows:

"In my opinion this man has reached maximal benefit from treatment following a wedge osteotomy presumably for correction of knock-kneed deformity associated with degenerative joint disease. The degenerative changes preexisted *the injury* of 1978 but presumably were aggravated by it. In my opinion, this man's disability is due to *this aggravation* of a preexisting abnormality. Moderate permanent partial disability is present on that basis." (Emphasis added.)

As aforesaid, the respondent relies solely upon negative and speculative evidence and innuendo. Rather than affirmatively demonstrating that the nurse on duty on June 15, 1978, did not see the petitioner about his knee, respondent relies on the absence of a report that should have been prepared by her, and suggests that the company policy of record-keeping produces infallible results. Further, rather than affirmatively demonstrating that the petitioner did not report the accident to Sumter, respondent relies on the petitioner's failure to produce him at the hearing.

As I see it, the manifest weight of credible evidence supports the petitioner's claim that his knee was injured on June 15, 1978, as a result of the accident as described by the petitioner, as substantially corroborated by his co-worker Ables, and as ultimately reported to the company doctor. That injury, as I view the credible evidence, aggravated a pre-existing degenerative joint disease and was compensable under the Workers' Compensation Act. See *Brandt Truck Lines, Inc. v. Industrial Com.* (1983), 99 Ill. 2d 233.

The Commission's undue reliance on negative and speculative evi-

dence and innuendo, as pressed by respondent to impeach the petitioner, led to unreasonable inferences which were properly reversed by the circuit court as being contrary to the manifest weight of the evidence. I would affirm the judgment of the circuit court of Peoria County and reinstate the award.